MASON A. BARNEY (*Pro Hac Vice to be Filed*)
mbarney@sirillp.com
RACHEL A. MEESE (*Pro Hac Vice to be Filed*)
rmeese@sirillp.com
SIRI & GLIMSTAD LLP
200 PARK AVENUE, SEVENTEETH FLOOR
NEW YORK, NEW YORK 10166
TEL: (212) 532-1091

SAM M. MURIELLA (SBN 132284)
sammuriella@yahoo.com
111 PACIFICA, SUITE 140
IRVINE, CA 92618
TEL: (949) 412-3586

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE THOMPSON,<br><br>                 Plaintiff,<br><br>v.<br><br>WALMART, INC,<br><br>              Defendant. | Case No.:  2:21-cv-02202<br><br>**COMPLAINT FOR**<br>**1.    VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181; AND**<br>**2.    VIOLATIONS OF THE UNRUH CIVIL RIGHTS ACT**<br><br>**DEMAND FOR JURY TRIAL** |

Tyrone Thompson, ("Plaintiff") by and through his undersigned counsel, hereby files this complaint against Defendant, Walmart Inc., a foreign corporation registered to do business in California, and alleges as follows based on his own knowledge and on information and belief as to all other matters:

///

1

## <u>INTRODUCTION</u>

1.      The U.S. enacted the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, ("ADA"), in 1990, the year after the invention of the world wide web.  Under that law, places of public accommodation must "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." *Id.* § 12182(b)(2)(A)(iii).  Yet despite the ADA being in place for the entire life of the world wide web, many companies still do not make their websites or mobile applications accessible to people with disabilities.  This includes publicly traded companies like Defendant Walmart Inc. ("Defendant").  In order to correct this glaring violation of the ADA, Plaintiff Tyrone Thompson brings this action individually against Defendant, for violating Title III of the ADA and California's Unruh Civil Rights Act ("Unruh Civil Rights Act") by not making its website and mobile application accessible.

2.      Plaintiff is visually impaired.  Like anyone else, Plaintiff regularly uses the internet in daily life, especially since the start of the COVID-19 pandemic.  Nevertheless, Defendant maintains a website (the "Website") at https://www.walmart.com/ and related domains, which include barriers that make it difficult or impossible for users with visual impairments to access the goods and services offered by Defendant.

3.      Defendant, therefore, excludes individuals with visual impairments from full and equal access to its goods and services. In the wave of technological advances in recent years, assistive technology is becoming an increasingly prominent part of everyday life

COMPLAINT

for people with disabilities, allowing people with visual impairments to access a variety of services fully and independently.

4.      Defendant also maintains a mobile application (software that is intended to run on mobile devises such as phones or tablet computers) that is not fully accessible and independently usable by visually impaired consumers. The mobile application at issue is available through the <u>Apple</u> "app store" for download and installation on <u>Apple</u> devices. (the "App"). Defendant developed the Website and App and made it available to millions of desktop, laptop, phone and tablet users in the Apple app store.

5.      Neither Defendant's Website nor its App are fully or equally accessible to people with visual impairments in violation of the ADA, and therefore, Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices and procedures so that Defendant's Website and App will become and remain accessible to people with visual impairments.

## **THE PARTIES**

6.      Plaintiff, Tyrone Thompson, at all times relevant and as alleged  herein, is a resident of Compton, California, in the County of Los Angeles.  Plaintiff is legally blind, and a member of a protected class of individuals under the ADA, pursuant to 42. U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.1010 *et. seq.*

7.      Defendant Walmart, Inc. is a Delaware corporation registered with the California Secretary of State to do business in this state, with its headquarters in

3

Bentonville, Arkansas. Defendant conducts a large amount of its business in California with 310 stores in the state[1] out of its 5,347 total stores in the United States. These stores constitute places of public accommodation. Defendant's stores provide to the public important goods and services. Defendant's Website and App provide consumers with access to an array of goods and services including store locators, information about electronics, movies, home goods, furniture, clothing, and other products.  The Website and App both allow the user to either have a product shipped to his or her home, or to reserve the product and pick it up at a Walmart store.

8.     Defendant's stores are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).  Defendant's Website and App are services, privileges, or advantages of Defendant's services, product and locations.

## JURISDICTION AND VENUE

9.     Defendant, Walmart is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Central District of California that caused injury and violated rights prescribed by the ADA and the Unruh Civil Rights Act, California Civil Code § 51 et seq, as to Plaintiff and as to other individuals with visual impairments.  A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in the Central District of California.  Specifically, on several separate occasions, Plaintiff has been denied the full use and enjoyment of the

---

[1] https://corporate.walmart.com/our-story/locations/united-states/california

4

facilities, goods, and services of Defendant's Website and App in Los Angeles County. The access barriers Plaintiff encountered on Defendant's Website and App have caused a denial of Plaintiff's full and equal access several times in the past, and now typically deter and/or prevent Plaintiff from accessing Defendant's Website and App.

10.     Similarly, the access barriers Plaintiff encountered on Defendant's Website and App have impeded Plaintiff's full use and equal enjoyment of goods and services offered at Defendant's brick-and-mortar stores by preventing Plaintiff from ordering good and services from Defendant's stores through the Website or App for pick-up and/or delivery.

11.     This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq*., and 28 U.S.C. § 1332.

12.     This Court has personal jurisdiction over Defendant because it, *inter alia*, is registered to do business in the state, and in fact conducts and continues to conduct a substantial and significant amount of business in the State of California, County of Los Angeles, and because Defendant's offending Website and App are available across California.

13.     Venue is proper in the Central District of California pursuant to 28 U.S.C. §1391 because Plaintiff resides in this District, Defendant conducts and continues to conduct a substantial and significant amount of business in this District, Defendant is

COMPLAINT

subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

## THE AMERICANS WITH DISABILITIES ACT

14.    The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for both sighted people and people with visual impairments.

15.    In today's tech-savvy world, individuals with visual impairments have the ability to access websites and mobile apps using keyboards or phone screens in conjunction with screen access software that vocalizes the visual information found on a computer screen. This technology is known as screen-reading software. Screen-reading software is currently the only method by which a person with a visual impairment may independently access the internet. Unless websites and mobile apps are designed to be read by screen-reading software, people with visual impairments are unable to fully access the websites or mobile apps, and the information, products, and services contained thereon.  The Website and App can be made accessible to persons with visual impairments without making changes that would impact their look or use for the sighted.

16.    Individuals with visual impairments using Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With

Speech, otherwise known as "JAWS," is currently the most popular, screen-reading software program available for a Windows computer.

17.    The Apple operating systems used in Mac, MacBook, iPhone, and iPad devices come with a built-in screen reader called VoiceOver.

18.    For screen-reading software to function, the information on a website or mobile app must be capable of being rendered into text. If the website or mobile app content is not capable of being rendered into text, persons with visual impairments cannot access the same content available to sighted users.

19.    The international website standards organization, the World Wide Web Consortium, known as W3C, in 2018 published version 2.1 of its Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 is an internationally recognized set of guidelines for digital accessibility and it published in 3 levels: A, AA, AAA.  Though WCAG 2.1 AA has not been legally adopted as the only standard, it has been recognized by the Department of Justice and numerous courts as the de facto standard for website and mobile app accessibility. It is the requirement that virtually all demand letters, federal and state lawsuits, the Department of Justice, and U.S. Department of Education actions have called for over the last two years.  As a result, most large business entities adopt the WCAG2.1 AA standard to ensure their websites and mobile apps are accessible to individuals with visual impairments.

20.     Within this context, numerous federal courts have recognized that websites and mobile apps that do not comply with WCAG2.1 AA violate the ADA with regard to the accessibility of such websites and mobile apps.

21.     In addition, any violation of the ADA constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code §51(f).

22.     Inaccessible or otherwise non-compliant websites and apps pose significant access barriers to persons with visual impairments. Common barriers encountered by persons with visual impairments include, but are not limited to, the following:

a.   A text equivalent for every non-text element is not provided;

b.   Title frames with text are not provided for identification and navigation;

c.   Equivalent text is not provided when using scripts;

d.   Forms with the same information and functionality as for sighted persons are not provided;

e.   Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.   Text cannot be resized without assistive technology up to 200 percent without loss of content or functionality;

g.   If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.   Web pages do not have titles that describe the topic or purpose;

8

i.  The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j.  One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.  The default human language of each web page cannot be programmatically determined;

l.  When a component receives focus, it may initiate change in context;

m.  Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.  Labels or instructions are not provided when content requires user input;

o.  In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p.  Inaccessible Portable Document Format (PDFs); and,

q.  The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

**FACTUAL BACKGROUND**

9

23.     Defendant created, maintains, and made the Website and App, which are available to the public. The Website and App offer features that allow consumers to access the goods and services that Defendant offers in connection with its physical locations. Defendant's Website and App offerings include, but are not limited to the following: groceries, electronics, movies, home, furniture, clothing, and other products that the user can either have shipped to their home or can reserve and pick up at a Walmart store.  The Website and App also offer numerous other benefits to Defendant's customers, including providing the location of Defendant's stores and information about each of its goods and services.

24.     Based on information and belief, it is Defendant's policy and practice to deny Plaintiff, along with other individuals with visual impairments, access to Defendant's Website and App, and therefore to specifically deny the goods and services that are offered and integrated with Defendant's stores. Due to Defendant's failure and refusal to remove access barriers on its Website and App, Plaintiff, and other persons with visual impairments have been and continue to be denied equal and full access to Defendant's stores and the numerous goods, services, and benefits offered to the public through Defendant's Website and App.

**Defendant's Barriers on its Website and App Deny Plaintiff Full Access**

25.     Plaintiff is a person with a visual impairment, who cannot use a computer without the assistance of screen-reading software. However, Plaintiff is a proficient user of the screen-reader software and uses it to access the internet. Plaintiff has visited

Defendant's Website and App on several separate occasions, each time attempting to use the screen-reader.

26. During Plaintiff's visits to Defendant's Website or App, Plaintiff encountered multiple access barriers which denied Plaintiff full and equal access to the facilities, goods, and services offered there to the public. Due to these widespread access barriers, Plaintiff, despite continued attempts, has been deterred, on a regular basis, from accessing Defendant's Website and App. Additionally, the access barriers Plaintiff encountered on Defendant's Website and App have deterred Plaintiff from visiting Defendant's brick-and-mortar stores.

27. The accessibility barriers Plaintiff encountered on Defendant's Website and App include, but are not limited to, the following:

    a. Landmarks such as main content and footer are not built using their corresponding HTML5 element and/or do not include a description using an "aria-label" attribute and a "role" tag that equals to "contentinfo" or "main;"

    b. Font icons, SVG ("Scalable Vector Graphics") or images that are being used as spacers, decorations or their purpose is already described by the content;

    c. All links do not include text that is setting expectations to what page they are leading to, and if empty links are used as layout wrapping elements, a

11

screen-reader only text or an "aria-label" attribute should be used for that description;

d. Links that open in a new tab or new window do not have an "aria-label" attribute or a screen reader only element explaining to screen-readers that this opens a new tab;

e. The Website does not contain hidden links on every page that enable a person by clicking on them (either using keyboard navigation or a screen-reader) to "skip" certain blocks directly to main landmarks such as main content, menu or footer;

f. Not all iframe elements include a "title" or an "aria-label" attribute explaining the purpose, the functionality or the destination of the iframe, or be tagged hidden for screen-readers if irrelevant;

g. Links are used as layout wrapping elements, a screen-reader only text or an "aria-label" attribute should be used for that description consistently; and

h. Links do not include a "role" attribute that equals to "presentation" or "none."

28.	In February 2021, Plaintiff attempted to purchase goods and services on Defendant's Website and on its App, however, the numerous barriers to access that Plaintiff encountered prevented him from making a purchase on either the Website or the App, or even navigating them in any meaningful manner.  As a result, these access barriers on the

Website and App denied Plaintiff full and equal access, and they deterred and continue to deter Plaintiff from accessing the Website and App on an ongoing basis.

29.    Likewise, based on the numerous access barriers Plaintiff has been deterred and impeded from the full and equal enjoyment of goods and services offered in Defendant's brick and mortar stores and from making purchases on Defendant's Website and App for pick-up or delivery from such physical locations.

### Defendant Must Remove Barriers to Its Website and App

30.    Due to the inaccessibility of Defendant's Website and App, persons with visual impairments such as the Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities and services Defendant offers to the public on its Website and App. The access barriers the Plaintiff encountered have caused a denial of the Plaintiff's full and equal access in the past, and now deter the Plaintiff on a regular basis from fully accessing the Website or the App, despite his periodic attempts to do so.

31.    Plaintiff  would visit Defendant's brick and mortar store and/or have items delivered from Defendant in the near future if the Plaintiff could fully access Defendant's Website and App.

32.    If Defendant's Website and App were equally accessible to all, Plaintiff could independently navigate the Website and App and complete a desired transaction, as sighted individuals do.

33.     Plaintiff, through his attempts to use the Website and App, has actual knowledge of the access barriers that make these services inaccessible and independently unusable by persons with visual impairment.

34.     Simple compliance with WCAG 2.1 would provide Plaintiff and others with visual impairments equal access to the Website and App, and those standards have been available for more than two years.  Therefore, Defendant has had more than adequate opportunity to make its Website and App accessible.  As such, Defendant engaged in acts of intentional discrimination, including, but not limited to, the following policies or practices: constructing and maintaining a website and mobile app that are inaccessible or only partially accessible to persons with visual impairments, including Plaintiff; failing to construct and maintain a website and mobile app that are sufficiently intuitive so as to be equally accessible to persons with visual impairments, including Plaintiff; and failing to take actions to correct these access barriers in the face of substantial harm and discrimination to individuals with visual impairments, such as Plaintiff.

35.     Defendant uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination against others, as alleged herein.

36.     The ADA expressly contemplates the injunctive relief that the plaintiff seeks in this action. In relevant part, the ADA requires "an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. . .[w]here appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid

14

or service, modification of a policy, or provision of an auxiliary aid or service…or provision of alternative methods." 42 U.S.C. § 12188(a)(2).

37. Because Defendant's Website and App are not equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to make Defendant's Website and App become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff to assist Defendant to comply with WCAG 2.1 guidelines for Defendant's Website and App. The Website and App must be accessible for people with visual impairments who use desktop computers, laptops, tablets, and smartphones.

38. Plaintiff asks that this permanent injunction require Defendant to cooperate with the agreed-upon consultant to: 1) train Defendant's employees and agents who develop the Website and/or App on accessibility compliance under the WCAG 2.1 guidelines (or any comparable guidelines later published by W3C); 2) regularly check the accessibility of the Website and App under the WCAG 2.1 guidelines (or any comparable guidelines later published by W3C); 3) regularly test user accessibility by persons with visual impairments to ensure that the Website and App comply with the WCAG 2.1 guidelines (or any comparable guidelines later published by W3C); and 4) develop an accessibility policy that is clearly disclosed on the Website and in the App, which includes contact information for users to report accessibility-related problems and require that any third-party vendors who participate on Defendant's Website or App ensure that its web

COMPLAINT

offerings are fully accessible to persons with visual impairment by conforming with WCAG 2.1 (or any comparable guidelines later published by W3C).

39. Although Defendant may currently have centralized policies regarding maintaining and operating Defendant's Website and App, Defendant lacks a plan and policy reasonably calculated to make the Website and App fully and equally accessible to, and independently usable by, persons with visual impairments.

40. Defendant has, upon information and belief, invested material sums in developing and maintaining its Website and App, and Defendant has generated substantial revenue from its Website and App. These amounts far exceed the associated cost of making Defendant's Website and App equally accessible to individuals with visual impairments.

41. Without injunctive relief, Plaintiff will continue to be unable to independently use Defendant's Website and App, violating his rights.

## **FIRST CLAIM FOR RELIEF**

**Violations of the Americans With Disabilities Act, 42 U.S.C. § 12181 *et seq.*
(Against Defendant, Walmart, Inc.)**

42. Plaintiff alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 41 of this Complaint as if set forth fully herein.

43. "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases

16

(or leases to), or operates a place of public accommodation." Section 302(a) of Title III of the ADA, codified at 42 U.S.C. § 12182(a).

44.     Unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods services, facilities, privileges, advantages or accommodations"; and "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden". Section 302(b)(2) of Title III of the ADA, codified at 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

45.     "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." 28 C.F.R. § 36.303(a).

46.    "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

47.    Defendant's store locations are "public accommodations" within the meaning of 42 U.S.C. § 12181 *et seq*. Defendant generates hundreds of millions of dollars in revenue from the sale of goods, amenities and services, privileges, advantages, and accommodations in California through its locations, Website, and App. Defendant's Website and App are services, privileges, advantages, and accommodations provided by Defendant that are partially or fully inaccessible to persons with visual impairments like Plaintiff. This inaccessibility denies individuals with visual impairments full and equal enjoyment of and access to the facilities and services, privileges, advantages, and accommodations that Defendant made available to customers with no visual impairments. Defendant is violating the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*., in that Defendant denies persons with visual impairments full use and access of the services, privileges, advantages, and accommodations provided by its Website and App. These violations are ongoing.

48.    Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability in violation of the Americans with Disabilities Act because Defendant has constructed its Website and App in a manner that is inaccessible or unequally accessible to Plaintiff; maintains the Website and App in this inaccessible form;

18

and has failed to take adequate actions to correct these barriers despite knowledge of the discrimination that such barriers cause.

49.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below in the Prayer for Relief.

## **SECOND CLAIM FOR RELIEF**

### **Violations of the Unruh Civil Rights Act, California Civil Code § 51 *et seq.* (Against Defendant Walmart, Inc.)**

50.     Plaintiff alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 41 of this Complaint as if set forth fully herein.

51.     Defendant's locations are "business establishments" within the meaning of the California Civil Code § 51 et seq. Defendant generates millions of dollars in revenue from the sale of its goods and services in California through its store's locations, related services, Website, and App. Defendant's Website and App are services provided by Defendant that is inaccessible or unequally accessible to persons with visual impairments like Plaintiff.

52.     Defendant's Website and App's inaccessibility denies individuals with visual impairments full and equal access to Defendant's facilities and services that Defendant makes available to the public at large. Defendant is violating the Unruh Civil Rights Act, California Civil Code § 51 et seq., in that Defendant is denying persons with visual

COMPLAINT

impairments full access to the goods and services provided by its Website and App. These violations are ongoing.

53.    Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability in violation of the Unruh Civil Rights Act, Cal. Civil Code § 51 *et seq.* because Defendant has constructed the Website and App and they are inaccessible or not fully accessible to Plaintiff, and Defendant maintains the Website and App in this inaccessible form, and Defendant has failed to take adequate actions to correct these barriers and the discrimination that such barriers cause.

54.    Defendant is also violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq.* in that the conduct alleged herein likewise constitutes a violation of various provisions of the ADA, 42 U.S.C. § 12101 *et seq.* as set forth above.

55.    Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

56.    The actions of Defendant were and are in violation of the Unruh Civil Rights Act, California Civil Code § 51 et seq., and, therefore, Plaintiff is entitled to injunctive relief remedying the discrimination.

57.    Plaintiff is also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense.

58.    Plaintiff is further entitled to reasonable attorneys' fees and costs.

COMPLAINT

59.     Plaintiff is entitled to a permanent injunction enjoining Defendant from violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq*., and requiring Defendant to take the steps necessary to make its Website and App readily accessible to and usable by persons with visual impairment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Tyrone Thompson, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A.     A preliminary and permanent injunction pursuant to 42 U.S.C. § 12188(a)(1) and (2) and section 52.1 of the California Civil Code enjoining Defendant from violating the ADA and Unruh Civil Rights Act and requiring Defendant to take the steps necessary to make its Website and App readily and fully accessible to and usable by individuals with visual impairments;

B.     An award of statutory minimum damages of $4,000 per offense pursuant to section 52(a) of the California Civil Code.

C.     An award of attorneys' fees and expenses pursuant to California Civil Code §§ 52(a), 52.1(h), 42 U.S.C. § 12205, and any other applicable provision of law;

D.     For pre-judgment interest to the extent permitted by law;

E.     For costs of suit; and,

F.     For such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

COMPLAINT

Dated:    March 11, 2021

SIRI & GLIMSTAD LLP

Mason A. Barney (*Pro Hac Vice to be filed*)
Rachel A. Meese (*Pro Hac Vice to be filed*)
200 Park Avenue, Seventeenth Floor
New York, New York 10166
Tel: (212) 532-1091
E: rmeese@sirillp.com


*/Sam M. Muriella/*
Sam M. Muriella (SBN 132284)
111 Pacifica, Suite 140
Irvine, CA 92618
E: sammuriella@yahoo.com
*Attorneys for Plaintiff*

COMPLAINT